In the Matter of Chrysler Corporation, Appellant, v Syracuse Suburban Gas Company, Inc., et al., Respondents.

Third Department, May 29, 1980

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

### APPEARANCES OF COUNSEL

*De Graff, Foy, Conway, Holt-Harris & Mealey (Algird F. White, Jr.,* of counsel), for appellant.

*Bond, Schoeneck & King (Wallace J. McDonald* of counsel), for Syracuse Suburban Gas Company, Inc., respondent.

*Peter H. Schiff (John C. Crary* of counsel), for Public Service Commission, respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

Chrysler Corporation operates a plant for the production of manual transmissions and transfer cases in the Town of DeWitt, near Syracuse. Syracuse Suburban Gas Company, Inc. (Suburban) is a gas distribution company servicing the DeWitt plant. Concerned over Chrysler's growing and well-publicized financial difficulties, Suburban sent Chrysler a letter dated August 8, 1979 demanding a security deposit in the amount of $500,000, the approximate equivalent of Chrysler's average bill covering a two-month period. This action was taken in spite of Chrysler's record of never having been delinquent on a payment to Suburban. When Chrysler refused to post the $500,000 Suburban petitioned the Public Service Commission (PSC) for an order requiring Chrysler to pay the security deposit, basing its request on section 117 of the Public Service Law. Chrysler then sought to have the PSC prohibit Suburban from requiring the security deposit. In a letter to Chrysler's attorney dated October 31, 1979, the Secretary of the PSC informed Chrysler that "the Commission finds no basis to interfere with Syracuse Suburban's right under section 117 of the Public Service Law, to require a deposit to secure payment for gas service rendered." Uncertain as to the legal effect of this letter, Chrysler's attorneys sought a clarification and requested that the PSC issue an order setting forth the terms and conditions of such a deposit if its letter constituted an agreement with Suburban's position. On November 14, 1979, a representative of the PSC told Chrysler's attorneys that the PSC would not issue such an order and would not prevent

Suburban from discontinuing service to the DeWitt plant if the deposit was not posted. Chrysler then commenced this article 78 proceeding to prohibit (1) Suburban's discontinuance of service to Chrysler unless it should be in default in payments owed to Suburban and (2) the PSC from requiring the payment of a security deposit. Special Term held that the PSC's interpretation of Suburban's power under section 117 of the Public Service Law was not irrational or unreasonable and dismissed the petition. This appeal ensued.

■ Initially, we note that there is some confusion as to whether there was any official action taken by the PSC in this matter necessary to invoke article 78 review. Even though the commission refused to issue an order when asked to do so on separate occasions by both Suburban and Chrysler, counsel for the PSC, on oral argument, indicated that it had waived any jurisdictional objection it may have had and conceded that its letters of October 31, 1979 and November 14, 1979 should be treated as having the force and effect of orders issued by the commission. We decline to accept the PSC's concession since its effect would be to confer subject matter jurisdiction on the court by authorizing an article 78 proceeding with its limited scope of judicial review. However, even if we refuse to treat the letters written by the PSC as orders, this article 78 proceeding need not be dismissed or converted into an action since the letters were, in actuality, declaratory rulings subject to article 78 review (State Administrative Procedure Act, § 204; 16 NYCRR Part 9).

Having concluded that this matter is properly before us as a proceeding pursuant to article 78, we turn to the merits and consider the propriety of Suburban's action in requesting a $500,000 security deposit from Chrysler. Suburban and the PSC contend that utilities have a statutory right to require an initial security deposit from a business customer of long standing in the absence of a delinquency of payment. In support of this contention, they rely on the language of section 117 of the Public Service Law, which states that a utility "may require any person to whom such [utility] shall supply gas, electric, water, steam, telegraph or telephone services to deposit a reasonable sum of money according to the estimated quantity of such services necessary to supply the same for two calendar months, to secure payment for such services actually rendered".

■ Chrysler, on the other hand, argues that section 117,

while permitting a utility's demand for a security deposit from any *new* customer, only authorizes such a demand from an *existing* customer when there has been a delinquency of payment. Although it cannot point to any specific statutory language containing such a limitation on a utility's right to require a security deposit from a customer, Chrysler urges that a reading of the entire section compels the conclusion that this limitation was intended by the Legislature. Since section 117 requires that a security deposit be refunded with interest to customers after a specified period of time where there has been no delinquency during that period,[1] but without prejudice to the utility's right to require a new deposit in the event of a future delinquency, Chrysler's position that the Legislature intended to protect existing customers with exemplary payment records from the burden of posting a security deposit is not without merit. However plausible such a theory might be, we have not been directed to any authority indicating that such was the Legislature's intent. Absent such proof, we are compelled to agree with respondents' interpretation and conclude that the Legislature meant exactly what it said when it authorized utilities to demand security deposits from *any* customer.[2]

One final point should be addressed. Although we are affirming the judgment of Special Term upholding the construction given section 117 of the Public Service Law by the PSC, we do not do so on the basis of *Matter of Howard v Wyman* (28 NY2d 434), which held that the construction given a statute by an agency responsible for its administration should be upheld if not irrational or unreasonable. Since the interpretation of section 117 is "one of pure statutory reading and

---

1. Residential customers who have timely paid their utility bills for one year must have their security deposits returned, while the deposit of a nondelinquent business customer may be retained by the utility for a "prudent period" beyond one year (Public Service Law, § 117). This "prudent period" may not exceed two years (16 NYCRR 225.6).

2. We are aware that this interpretation of section 117 of the Public Service Law could lead to abuse by utilities who may find demanding security deposits from existing customers a cheaper and more expedient method of increasing working capital than borrowing money from conventional sources. The Legislature, however, has not been unaware of this problem. Chapter 269 of the Laws of 1970 replaced the fixed 4% interest rate which utilities had been required to pay on security deposits with a system in which the PSC annually determines an interest rate reasonably related to the current rate for other borrowings by the utility. The current interest rate that Suburban and other gas utilities must pay on security deposits, as established by the PSC, is 9% (16 NYCRR 225.3).

analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459) and such a determination should be made by the judiciary.

The judgment should be affirmed, without costs.

GREENBLOTT, SWEENEY, KANE and CASEY, JJ., concur.

Judgment affirmed, without costs.